UZZI O. RAANAN (State Bar No. 162747)
*uraanan@DanningGill.com*
DANIELLE R. GABAI (State Bar No. 339242)
*DGabai@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for John J. Menchaca,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>ROK MOBILE, INC.,<br><br>Debtor. | Case No. 2:21-bk-13413-SK<br><br>Chapter 7<br><br>**TRUSTEE'S NOTICE OF MOTION AND MOTION TO (1) APPROVE SETTLEMENT AGREEMENT WITH THE SETTLING PARTIES AND (2) APPROVE SALE OF ESTATE PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF JOHN J. MENCHACA, AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF**<br><br>**Hearing:**<br>Date: January 18, 2023<br>Time: 9:00 a.m.<br>Ctrm.: 1575<br>255 E. Temple Street<br>Los Angeles, California 90012<br>**(HEARING TO BE HELD VIA ZOOMGOV ONLY)** |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, UNITED STATES TRUSTEE, AND INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on **January 18, 2023, at 9:00 a.m. (Pacific Time)** before the Honorable Sandra Klein, United States Bankruptcy Judge, in Courtroom 1575 at the United States Bankruptcy Court located at 255 E. Temple St., Los Angeles, California 90012 (the "**Bankruptcy Court**"), John J. Menchaca, the Chapter 7 trustee (the "**Trustee**") for the estate of ROK MOBILE, Inc. (the "**Debtor**"), will, and hereby does, move (the "**Motion**") the Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, 11 U.S.C. § 363, Local Bankruptcy Rules 6004-1(c) and 9013-1(o) for an order:

1. approving the compromise between the Trustee, on the one hand, and ROKiT World, Inc., ROLA Records Inc, ROKiT World Limited, ROKiT Launch Limited, ROK Distribution LLC, ROK Mobile International Inc, ROK Stars Limited, RK Global PLC, ROK Water Technology Limited, Jonathan Kendrick, Daniel Lewis, and John Paul DeJoria (collectively the "**Settling Parties**"), on the other hand;

2. approving the sale of the Trustee's right, title and interest in a default judgment (the "**Judgment**") and five trademarks (the "**Trademarks**," collectively with the Judgments the "**Sale Property**") to the Settling Parties; and

3. waiving the 14-day stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

Due to the ongoing COVID-19 Pandemic, Judge Klein will continue to hold all hearings, including chapter 13 confirmation hearings, remotely until further notice. Hearings will be held via ZoomGov. The first page of Judge Klein's publicly posted hearing calendar will provide video and audio connection information for the hearings. The calendar can be accessed at the following web address: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SK (Click on the "Select Judge" tab on the upper left side of the screen and select Judge Klein).

You may appear by video and audio via ZoomGov using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device (such as an iPhone and/or Android phone). Alternatively, you may participate by ZoomGov via audio only by using a telephone (standard telephone charges may apply). Neither a Zoom account nor a ZoomGov account are necessary to participate and no pre- registration is required. The audio portion of each hearing will be recorded electronically by the Court and constitute its official record.

**The Compromise**

Based on his investigation, the Trustee has identified potential claims (the "**Potential Claims**") against one or more of the Settling Parties, including claims to avoid prepetition transfers as well as possible breaches of fiduciary duty, among others. The Settling Parties dispute the Trustee's Potential Claims.

As described below, the Trustee and Settling Parties have negotiated and entered into a settlement agreement (the "**Agreement**") involving a proposed sale of certain estate assets and mutual releases by both parties, subject to the Court's approval. The proposed sale is based on the terms set forth in the Agreement, a copy of which is attached hereto as Exhibit "1." The Agreement provides, among other things, the following material terms:

1. The terms of this Agreement are subject to the approval of the Bankruptcy Court and, if appropriate, overbids. The Trustee is only selling the Estate's right, title and interest in the Sale Property. The Trustee is selling the Sale Property in an "as is" condition or basis, without any representations or warranties whatsoever.

2. Within five (5) business days after a full execution of this Agreement, the Trustee's counsel will prepare and file a motion (the "**Compromise Motion**") for entry of an order approving this Agreement and the terms hereof, as well as the Trustee's sale of the Sale Property to the Settling Parties (the "**Approval Order**").

3. Settlement and Sale Amount. In consideration for the terms of this Agreement, the Settling Parties shall pay the Trustee for the benefit of Debtor's estate a total of $500,000 (the "**Payment**"), in good funds. The Payment shall be made as follows:

A. Within three (3) business days after entry by the Court of the Approval Order, the Settling Parties shall deliver to the Trustee $200,000 (the "**First Payment**");

B. Within 30 days after entry by the Court of the Approval Order, the Settling Parties shall deliver to the Trustee $200,000 (the "**Second Payment**");

C. Within 60 days after entry by the Bankruptcy Court of the Approval Order, the Settling Parties shall deliver to the Trustee $100,000 (the "**Third Payment**").

If the Approval Order is not entered by the Bankruptcy Court or any overbidder is permitted to acquire the Sale Property, the Settling Parties shall have no further obligations under this Agreement and the Parties will return to the status quo ante existing prior to execution of this Agreement.

Upon entry of the Approval Order and only after payment in full of the Payment amount in good funds, the Trustee shall deliver all rights associated with the Judgment to **RK Solutions, Inc.** After payment in full of the Payment amount, RK Solutions, Inc. will succeed to the Trustee's position with respect to any litigation involving the Judgment, including, without limitation, the right to oppose the appeal pending in the Court of Appeal of the State of California, Second Appellate District, Division 2, in Case No. B308642 (the "**Appeal**").

4. Waiver of Claims Against the Estate. The Settling Parties hereby agree that all claims they currently have or may have in the future in the Case against the Estate or the Trustee, whether or not filed in the Case to date, including any liens or encumbrances attached thereto, shall be waived and released in full, effective as of the of the Trustee's receipt of the final installment of the Payment. This includes any claims under 11 U.S.C. section 502(h), among others.

5. **Releases**.

Effective as of the date of the Trustee's receipt of the final installment of the Payment, and except as provided in this Agreement, the Trustee, on behalf of himself and the Estate, hereby releases, remises, relieves, waives, relinquishes and discharges the Settling Parties, as well as Settling Parties' affiliates and subsidiaries, and their respective officers, employees, members, partners, shareholders, agents, representatives, attorneys, heirs, successors and assigns, including but not limited to ROKiT World, Inc., ROLA Records Inc, ROKiT World Limited, ROKiT Launch Limited, ROK Distribution LLC, ROK Mobile International Inc, ROK Stars Limited, RK Global PLC, ROK Water Technology Limited, Jonathan Kendrick, Daniel Lewis, and John Paul DeJoria of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which the Trustee or the Estate had, now have, or may hereafter claim to have by reason of any matter, cause or circumstance arising out of or relating to the Case and/or the Potential Claims.

a. Effective as of the date of the Trustee's receipt of the final installment of the Payment, and except as provided in this Agreement, the Settling Parties hereby release, remise, relieve, waive, relinquish and discharge the Trustee, the Estate, and their officers, employees, members, partners, shareholders, agents, representatives, attorneys, heirs, successors and assigns, of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which the Settling Parties had, now have, or may hereafter claim to have by reason of any matter,

cause or circumstance arising out of the Case. This release includes any and all claims the Settling Parties may assert against the Estate and Trustee for any reason.

b. The Parties waive any and all rights and benefits they may have under section 1542 of the California Civil Code. That section reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**The Proposed Sale of the Sale Property**

Pursuant to Local Bankruptcy Rule 6004-1(c), the Trustee provides the following information:

1. The proposed buyers are ROKiT World, Inc., ROLA Records Inc, ROKiT World Limited, ROKiT Launch Limited, ROK Distribution LLC, ROK Mobile International Inc, ROK Stars Limited, RK Global PLC, ROK Water Technology Limited, Jonathan Kendrick, Daniel Lewis, and John Paul DeJoria (collectively the "**Settling Parties**").

2. The property to be sold consists of the Trustee's right, title, and interest in (1) a default judgment obtained by the Debtor prepetition in a state court action against Schad Brannon, an individual, in the amount of $450,0000 (the "**Judgment**"), which is currently on appeal before the California Court of Appeal; and (2) the following five (5) Trademarks owned by the Debtor:

(a) ROKIT ONE, Reg. No. 5892462

(b) ROKIT F ONE, Reg. No. 5892452

(c) ROKIT IO PRO, Reg. No. 5904401

(d) ROKIT IO 3D, Reg. No. 5892449

(e) ROKIT IO LIGHT, Reg. No. 5904400

3. The Trustee is selling his right, title and interest in the Sale Property and settling all claims against the Settling Parties for the sum of **$500,000.00**. The Sale Property is being sold on an "as is" condition or basis, without any representations or warranties whatsoever. By the terms

of the Agreement, the Trustee's sale of the Sale Property is contingent upon the Court's approval of the Agreement under rule 9019 and approval of the Trustee's proposed sale under rule 6004.

4. The Trustee has determined that the Sale Property will be difficult to market to other parties because of the uncertainty surrounding the Appeal, which is pending before the California Court of Appeal, the Judgment's collectability, and the fair market value of the Trademarks.

5. The Judgment was obtained by default and is currently on appeal before the California Court of Appeal. The costs of litigating the Appeal and, if the Judgment is set aside, relitigating in the trial court render the value of this asset uncertain and clearly lower than the face value of the Judgment. Similarly, the value of the five Trademarks is uncertain, as they are very unique and specific to businesses that are not common. Moreover, the Trademarks are related to the ROKIT trademark/brand that is owned by Debtor's principals. The ROKIT brand is not owned by the Debtor and any buyer of the Trademarks may have to resolve legal disputes over usage of the Trademarks, which may be limited due to the related ROKIT trademark. For these reasons, among others, the Trustee believes that the proposed sale and sale price are fair and reasonable, and thus the proposed sale is not proposed to involve an opportunity for overbids.

6. The net amount to be received by the Debtor's estate is $500,000, less administrative expenses incurred in this bankruptcy case.

7. The estimated tax consequences to the estate are currently unknown, but the Trustee does not anticipate significant tax liabilities as a result of the present asset sale.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of John J. Menchaca, and the Request for Judicial Notice, the papers and pleadings on file, oral argument at the hearing on the Motion, and such other evidence as may be presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(o), any response and request for hearing must be filed with the court and served on the movant and the United States Trustee within 14 days after the date of service of the notice. In the absence of an objection, an order may be entered approving the Agreement without further notice or hearing.

DATED: December 9, 2022

DANNING, GILL, ISRAEL & KRASNOFF, LLP

By: /s/ Uzzi Raanan

UZZI O. RAANAN
DANIELLE R. GABAI
Attorneys for John J. Menchaca, Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTUAL SUMMARY

### A. Bankruptcy Background

ROK Mobile, Inc. (the "**Debtor**") engaged in the business of selling mobile phone cellular services in the United States. The Debtor is part of a complex corporate structure and is one of numerous entities owned by various parent companies located in England and Ireland. These companies also use the name "ROK" in their names, and cover various products and services, mostly unrelated to the Debtor's mobile services business model.

On or about April 27, 2021 (the "**Petition Date**"), Debtor commenced this case by filing a voluntary petition (the "**Bankruptcy Case**") for relief under Chapter 7 of the Bankruptcy Code (the "**Code**"). John J. Menchaca, the Chapter 7 trustee (the "**Trustee**") accepted appointment as the Chapter 7 trustee herein.

### B. Trustee's Investigation

The Trustee, through his court-appointed counsel and financial advisors, obtained and reviewed a large amount of financial information, including prepetition revenues and expenses, loans and loan agreements, liens, insurance policies, bank statements, various transfers between the Debtor and various related ROK and ROKIT entities, and corporate formation documents. The Trustee conducted a lengthy 341(a) meeting of creditors examination of one of the Debtor's principals. He also conducted a rule 2004 examination of Daniel Lewis, designated as Debtor's person most knowledgeable on various subjects, including Debtor's finances and reasons for the failure of Debtor's business.

As reflected in Debtor's schedules, the estate's assets include a $450,000 default Judgment against Schad Brannon, a former employee of the Debtor. The Judgment is currently on appeal in the California Court of Appeal, Second Appellate District. Debtor's assets also include five (5) unique Trademarks, identified as:

(a) ROKIT ONE, Reg. No. 5892462

(b) ROKIT F ONE, Reg. No. 5892452

(c) ROKIT IO PRO, Reg. No. 5904401

(d) ROKIT IO 3D, Reg. No. 5892449

(e) ROKIT IO LIGHT, Reg. No. 5904400

Debtor's financial documents and accounting records show that Debtor received millions of dollars in funds over the years from its parent companies, mostly through secured loans. The Debtor made numerous transfers back to its parent companies and affiliated entities. The Trustee identified Potential Claims against one or more of the Debtor's insiders and/or parent companies, including possible fraudulent transfers and breaches of fiduciary duty.

The Settling Parties dispute the Trustee's Potential Claims, arguing, among other things, that they loaned the Debtor more money than they received back, and that they properly managed the Debtor's business affairs. Debtor's principals argue that Debtor's business failed because the delivery of streaming music, which was a major component of Debtor's business model, changed after the Debtor was formed, making it difficult for the Debtor to compete profitably.

**C. <u>The Agreement</u>**

Following significant settlement discussions, and to avoid expensive and protracted litigation, the Trustee and Settling Parties reached an agreement to resolve the Trustee's Potential Claims against the Settling Parties and for the Settling Parties' purchase of the Sale Property, subject to Court approval. The terms of the settlement and the proposed sale are set forth in full in the Agreement. Without modifying in any respect, the terms set forth therein, the Agreement provides that:

1. The terms of this Agreement are subject to the approval of the Bankruptcy Court and, if appropriate, overbids. The Trustee is only selling the Estate's right, title and interest in the Sale Property. The Trustee is selling the Sale Property in an "as is" condition or basis, without any representations or warranties whatsoever.

2. Within five (5) business days after a full execution of this Agreement, the Trustee's counsel will prepare and file a motion (the "**Compromise Motion**") for entry of an order approving this Agreement and the terms hereof, as well as the Trustee's sale of the Sale Property to the Settling Parties (the "**Approval Order**").

3.    Settlement and Sale Amount.  In consideration for the terms of this Agreement, the Settling Parties shall pay the Trustee for the benefit of Debtor's estate a total of $500,000 (the "**Payment**"), in good funds.  The Payment shall be made as follows:

A.    Within three (3) business days after entry by the Court of the Approval Order, the Settling Parties shall deliver to the Trustee $200,000 (the "**First Payment**");

B.    Within 30 days after entry by the Court of the Approval Order, the Settling Parties shall deliver to the Trustee $200,000 (the "**Second Payment**");

C.    Within 60 days after entry by the Bankruptcy Court of the Approval Order, the Settling Parties shall deliver to the Trustee $100,000 (the "**Third Payment**").

If the Approval Order is not entered by the Bankruptcy Court or any overbidder is permitted to acquire the Sale Property, the Settling Parties shall have no further obligations under this Agreement and the Parties will return to the status quo ante existing prior to execution of this Agreement.

Upon entry of the Approval Order and only after payment in full of the Payment amount in good funds, the Trustee shall deliver all rights associated with the Judgment to **RK Solutions, Inc.**  After payment in full of the Payment amount, RK Solutions, Inc. will succeed to the Trustee's position with respect to any litigation involving the Judgment, including, without limitation, the right to oppose the appeal pending in the Court of Appeal of the State of California, Second Appellate District, Division 2, in Case No. B308642 (the "**Appeal**").

4.    Waiver of Claims Against the Estate.  The Settling Parties hereby agree that all claims they currently have or may have in the future in the Case against the Estate or the Trustee, whether or not filed in the Case to date, including any liens or encumbrances attached thereto, shall be waived and released in full, effective as of the of the Trustee's receipt of the final installment of the Payment.  This includes any claims under 11 U.S.C. section 502(h), among others.

5.    **Releases**.

Effective as of the date of the Trustee's receipt of the final installment of the Payment, and except as provided in this Agreement, the Trustee, on behalf of himself and the Estate, hereby releases, remises, relieves, waives, relinquishes and discharges the Settling Parties, as well as Settling Parties' affiliates and subsidiaries, and their respective officers, employees, members, partners, shareholders, agents, representatives, attorneys, heirs, successors and assigns, including but not limited to ROKiT World, Inc., ROLA Records Inc,

ROKiT World Limited, ROKiT Launch Limited, ROK Distribution LLC, ROK Mobile International Inc, ROK Stars Limited, RK Global PLC, ROK Water Technology Limited, Jonathan Kendrick, Daniel Lewis, and John Paul DeJoria of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which the Trustee or the Estate had, now have, or may hereafter claim to have by reason of any matter, cause or circumstance arising out of or relating to the Case and/or the Potential Claims.

        c.    Effective as of the date of the Trustee's receipt of the final installment of the Payment, and except as provided in this Agreement, the Settling Parties hereby release, remise, relieve, waive, relinquish and discharge the Trustee, the Estate, and their officers, employees, members, partners, shareholders, agents, representatives, attorneys, heirs, successors and assigns, of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which the Settling Parties had, now have, or may hereafter claim to have by reason of any matter, cause or circumstance arising out of the Case. This release includes any and all claims the Settling Parties may assert against the Estate and Trustee for any reason.

        d.    The Parties waive any and all rights and benefits they may have under section 1542 of the California Civil Code. That section reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

A true and correct copy of the Agreement is attached as Exhibit "1" to the Declaration of John J. Menchaca.

It is the Trustee's business judgment that the terms of the Agreement, including the compromise of possible claims and the proposed sale, are fair, reasonable, and in the best interests of the Estate and its creditors, and respectfully requests approval of the Agreement in full.

## II.

## LEGAL ARGUMENT

### A. Approval of the Trustee's Agreement to Compromise the Potential Claims is Warranted Under Bankruptcy Rule 9019

Inherent in the grant of jurisdiction to the district courts over all civil proceedings arising under, arising in or related to cases under title 11, is the Court's authority, under Section 105(a) of the Bankruptcy Code, to enter orders approving compromises. This power is expressly recognized in Bankruptcy Rule 9019(a), which provides that the Court may approve a compromise or settlement on motion by the trustee after notice is provided pursuant to Bankruptcy Rule 2002. The approval of a compromise is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (O). In re Carla Leather, Inc., 50 B.R. 764, 775 (Bankr. S.D.N.Y. 1985).

The approval or rejection of a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. In re Walsh Construction, Inc., 669 F.2d 1325, 1328 (9th Cir. 1982). The burden of establishing the fairness of the compromise rests on the proponent, here, the Trustee.

In determining the acceptability of a proposed compromise, the following four factors should be considered: (1) the probability of success in the litigation; (2) the difficulties, if any, encountered in the matter of collection; (3) the complexity of the litigation involved, the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views. In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986); Flight Transportation Corporation Securities Litigation, 730 F.2d 1128, 1135 (8th Cir. 1984). This Court is not required to decide the questions of law and fact in dispute, but to canvas the issues to see whether the "settlement falls below the lowest point in a range of reasonableness." In re Teletronics Services, Inc., 762 F.2d 185, 189 (2d Cir. 1985) (quoting In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983)).

The Trustee believes that the Agreement is fair and reasonable, in the best interest of the estate and its creditors and satisfies the standards for approval of a settlement. With respect to the

factors set forth in A & C Properties, the Trustee believes that the Agreement should be approved based on the factors discussed below.

1. **Probability of Success in Litigation**

While the Trustee is confident in the merits of his Potential Claims, success in litigating the claims is not guaranteed. To prevail on his possible fraudulent transfer claims, the Trustee would need to prove that various transfers to insiders were either made with actual intent to hinder, delay or defraud Debtor's creditors ("actual intent") or that while Debtor was insolvent (or became insolvent as a result of the transfers) it received less than reasonably equivalent value ("constructive fraud). Proving a fraudulent transfer claim under either actual intent or constructive fraud would not be easy here.

The Settling Parties maintain that Debtor received significant loans from its parent company and its affiliates which far exceeded the amounts Debtor transferred to these insiders. They argue that all transfers to insiders were returns of loans that were properly secured and documented. Thus, they argue that there was no effort to hinder, delay or defraud Debtor's unsecured creditors, whose claims were less senior to those of Debtor's insiders. Similarly, they point out that the loans to the Debtor amounted to more than reasonably equivalent value. The Trustee has confirmed that loans to the Debtor from affiliated entities were tied to loan agreements.

Similarly, proving breaches of fiduciary duty (care and loyalty) by the Settling Parties would be difficult. Debtor's business model was based on selling cellular telephone service with a music streaming service. As music streaming companies like Spotify and Pandora offered their services for free, albeit with commercials, there is an argument that Debtor's business model became obsolete. If true, establishing the elements of a breach of fiduciary duty, especially proximate cause and damages, might be difficult.

The outcome of litigating these potential claims is therefore uncertain. This factor therefore supports approval of the proposed compromise.

2. **Difficulties in Collection**

The Trustee does not believe collection would be an issue were he to pursue and prevail in his claims against the Settling Parties. However, some of the Settling Parties are individuals who appear to reside abroad. Also, most of the entity Settling Parties are located in England and Ireland, and the Trustee is unaware of what assets these entities maintain in the United States. As such, this factor also appears to support an amicable settlement of the Trustee's Possible Claims.

3. **Complexity, Expense, Inconvenience and Delay of Litigation**

Litigation of the Potential Claims will involve complex accounting and corporate governance issues, expert testimony of how much capital was required to keep the Debtor properly capitalized as well as other governance issues, proper fiduciary duties owed by parent entities to affiliates they manage, and extensive forensic accounting of hundreds of transfers made by the Debtor over a period of about three years. The litigation will be time-consuming and expensive, with no guarantee that the Trustee would recover an amount greater than the Settlement Amount proposed under this Agreement. Moreover, any recovery would be diminished by the litigation costs incurred by the Estate.

Even if the Trustee were to succeed on the merits, the fact that the Settling Parties appear to be well-funded likely means an appeal of any ruling in favor of the Trustee, causing additional expense and delay to any resolution. Settling now and receiving the Settlement Amount will bring money into the Estate and eliminate the risk and inconvenience of engaging in complex litigation.

4. **Interest of Creditors**

The Agreement serves the paramount interest of Debtor's creditors. The currently filed creditor claims against the estate total approximately $204,785.25 (Eight Claims). While additional claims may be filed in the future, the $500,000 Settlement Amount will be sufficient to cover the estate's administrative expenses plus a significant portion, if not all, of the creditor body's claims. Additionally, a review of Debtor's schedules shows that Debtor's insiders hold over

$78,000,000 in potential claims against the Estate. Under the Agreement, the Settling Parties agree to waive all claims they assert against the Estate, which will benefit non-insider claimants.

In the Trustee's business judgment, the Agreement results in a significant recovery to Estate creditors for the Potential Claims and Sale Property. The Trustee does not believe the Sale Property will be of great interest to other third parties, other than perhaps to defendant in the action giving rise to the Judgment. However, the Trustee reached out to Schad Brennan in an effort to sell the Judgment to him. Mr. Brennan offered significantly less than the Settlement Amount.

As noted above, if the Agreement is not approved, the Trustee will await the results of the Appeal. If the default Judgment is reversed, the Trustee will need to litigate the underlying state court claims, which would be time-consuming and expensive. If successful in such litigation, collectability of the Judgment would be uncertain. In any event, the Judgment is for $450,000, which is less than the Settlement Amount.

The Trademarks are similarly unlikely to be of great value to parties other than the Settling Parties, due to their unique names and nature, and their apparent reliance on other trademarks that are not owned by the Debtor.

In light of these facts, the estate may not generate funds to distribute to creditors absent this Agreement.

In sum, the A&C Properties factors all support approval of the Agreement.

**B. The Proposed Sale is Supported by the Trustee's Sound Business Judgment and Should be Approved Pursuant to 11 U.S.C. § 363(b)(1)**

The Trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In this circuit and others, courts will authorize sales where the trustee's decision to sell assets outside the ordinary course of business is based upon sound business judgment. In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Derivium Capital, LLC, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) ("In determining whether to approve a sale proposed by a trustee, courts generally apply a business judgment test").

Based on the Second Circuit's decision in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), courts generally hold that the following four elements must exist to satisfy the "sound business judgment test": (1) sound business reasons; (2) accurate and reasonable notice to interested persons; (3) an adequate, fair and reasonable price; and (4) good faith. See Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (affirming sale of debtor's assets proposed by trustee as being supported by a sound business purpose); Lionel, 722 F.2d at 1071.

Generally, a trustee's decision to sell an estate asset "is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection." In re Lahijani, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); Derivium, 380 B.R. at 404 ("the Trustee's business judgment is to be given 'great judicial deference,' [however] the Court must scrutinize whether the Trustee has fulfilled his duty to 'maximize the value obtained from a sale'").

Here, the Trustee seeks to sell the Sale Property, comprised of the Judgment and five registered Trademarks pursuant to 11 U.S.C. § 363(b)(1). The proposed sale represents a sound exercise of the Trustee's business judgment because, without the sale, the Debtor's Estate will likely be unable to realize a greater value from the Sale Property than the value offered by the Settling Parties. Moreover, there is a chance that failure to sell the Judgment to the Settling Parties at this time will result in a partial or even complete devaluation of that asset, depending on whether the Court of Appeal sets aside the Judgment in the currently pending appeal.

The Trustee also believes that the unique nature of the Trademarks, and their dependence on the "ROK" and "ROKiT" trademarks that are owned by Debtor's principals, may create legal issues for anyone who purchases the Trademarks. As such, the Trustee does not believe there is a strong market for the Trademarks, other than to sell to the Settling Parties.

The combined price for the Sale Property and Possible Claims was arrived at following arms-length negotiations and the Trustee believes that it represents a fair and adequate price for the Sale Property and Possible Claims. The sale price will generate sufficient funds to cover the Estate's administrative claims and a significant distribution to the unsecured creditors. In the Trustee's business judgment, the sale price for the Sale Property is likely the best that can

reasonably be obtained given the unique nature of the Sale Property, and thus subjecting the sale to overbids is unnecessary in the Trustee's view.

## III.

## CONCLUSION

For the foregoing reasons, the Trustee requests that the Court enter an order:

1. approving the Settlement Agreement between the Trustee and the Settling Parties, a copy of which is attached as Exhibit "1" to the Declaration of John J. Menchaca;

2. approving the sale of the Trustee's right, title and interest in the Sale Property to the Settling Parties pursuant to the terms of the Agreement;

3. authorizing a waiver of the 14-day stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure;

4. authorizing the Trustee to execute all documents and to take any action reasonably necessary to effectuate the Settlement Agreement;

5. approving the form and manner of notice provided by the Trustee of the sale; and

6. granting such other and further relief as the Court deems just and proper.

DATED: December 9, 2022

DANNING, GILL, ISRAEL & KRASNOFF, LLP

By: [signature]
UZZI O. RAANAN
DANIELLE R. GABAI
Attorneys for John J. Menchaca, Chapter 7 Trustee

**DECLARATION OF JOHN J. MENCHACA**

I, John J. Menchaca, declare as follows:

1. I am the chapter 7 trustee for the estate of ROK Mobile, Inc. (the "**Debtor**").

2. I have personal knowledge of the facts stated herein, except those set forth on information and belief and, as to those matters, I believe them to be true. If called upon to serve as a witness, I could and would testify competently with respect to such facts.

3. This declaration is submitted in support of my Motion (the "**Motion**) to Approve Settlement Agreement (the "**Agreement**") and Approve Sale of Estate Property.

4. The property to be sold under the Agreement consists of my right, title, and interest in (1) a default judgment obtained by the Debtor prepetition against Schad Brannon, an individual, in the amount of $450,0000 (the "**Judgment**"), in ROK Mobile, Inc. v. Schad Brannon, Los Angeles Superior Court No. 19SMCV01492; and (2) the following five (5) registered trademarks (the "**Trademarks**") owned by the Debtor (collectively the "**Sale Property**"):

(a) ROKIT ONE, Reg. No. 5892462

(b) ROKIT F ONE, Reg. No. 5892452

(c) ROKIT IO PRO, Reg. No. 5904401

(d) ROKIT IO 3D, Reg. No. 5892449

(e) ROKIT IO LIGHT, Reg. No. 5904400

5. My court appointed attorneys and financial advisors in this case have reviewed large volumes of financial information received from the Debtor, including prepetition revenues and expenses, loan agreements, liens, insurance policies, bank statements, and records of various transfers between the Debtor and related ROK and ROKIT entities. I requested and reviewed additional documentation including the Debtor's accounting ledgers, bank statements, and trademark information.

6. Prior to executing the Agreement, I conducted a lengthy 341(a) meeting of creditors examination of one of the Debtor's principals. My counsel also conducted a rule 2004 examination of Daniel Lewis, designated as Debtor's person most knowledgeable on various subjects, including Debtor's finances and reasons for the failure of Debtor's business.

7. Based on my investigation, conducted with the assistance of my counsel and financial advisors, I identified potential claims (the "**Potential Claims**") against one or more of the Settling Parties, including potential avoidance claims based on fraudulent transfer theories and breaches of fiduciary duty, among other.

8. Debtor's financial documents and accounting records show that Debtor received millions of dollars in funds over the years from its parent companies, mostly through secured loans. The Debtor made numerous transfers back to its parent companies and affiliated entities. The Trustee identified Potential Claims against one or more of the Debtor's insiders and/or parent companies, including possible fraudulent transfers and breaches of fiduciary duty.

9. Through counsel, I engaged in extensive discussions with Debtor's owners regarding the estate's Potential Claims and the Sale Property. The negotiations culminated in the Agreement with the Settling Parties. A true and correct copy of the Agreement is attached herein as Exhibit "1."

10. Based on my counsel's and my review of Debtor's records, I believe it would be expensive to litigate over the Potential Claims. They involve extremely complex legal and factual issues of corporate governance and financial transactions involving multiple entities and owners. This is because Debtor's principals loaned large amounts of money to the Debtor but also repaid themselves large amounts. Whether the transfers rendered Debtor undercapitalized or reflected breaches of any duties of care or loyalty are difficult questions of law and fact. Similarly, fraudulent transfer claims are difficult to prove in a case like this, where the transferees also loaned to the Debtor much of the funds it possessed and documented the loans extensively. These issues would therefore be complex, expensive and time-consuming to litigate, and the ultimate results would be uncertain.

11. I also believe that the proposed sale of the Sale Property, pursuant to the terms set forth in the Agreement, is the best method by which to maximize the value of the estate's interest in the Sale Property, particularly in light of the uncertainty surrounding the Judgment's collectability and the value of the Trademarks.

12. The Judgment has a face value of $450,000. However, this is a default judgment which is on appeal before the California Court of Appeal. Unless I sell the Judgment, I will need to prevail in the appeal. Were the Judgment set aside, I would have to further litigate Debtor's claims against the defendant, a former employee of the Debtor. The costs of litigation could very well consume any recovery I obtain on the Judgment. In fact, were the Judgment set aside, litigation in the trial court could result in a judgment for a lower amount than the current Judgment amount, or even a complete defense verdict. Even if the Judgment is upheld on appeal, collection on the Judgment is not guaranteed.

13. Similarly, the value of the five Trademarks is uncertain. They are unique and specific to business names that are not common. The Trademarks are also related to the ROK and ROKIT trademarks/brands that are apparently owned by Debtor's principals. As these brands are not owned by the Debtor, any buyer of the Trademarks may have to resolve disputes over usage of the Trademarks.

14. In my business judgment, the Agreement, including the proposed sale of assets, is fair, reasonable, and in the best interests of the Debtor's estate and its creditors, and it should be approved

15. I believe that the sale price for the Sale Property is fair, reasonable, and likely the best that can reasonably be obtained under the circumstances surrounding the unique nature of the property, and thus I believe that subjecting the sale to overbid is unnecessary.

16. I certify that I have not been contacted by any potential over-bidders with regard to the Sale Property with offers anywhere close to that offered by the Settling Parties. While Schad Brannon informally offered to purchase the Judgment, the price offered was not comparable or even close to that offered by the Settling Parties. Therefore, in my business judgment there are no viable alternative purchasers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 8th, 2022, at Los Angeles, California.

JOHN J. MENCHACA

**REQUEST FOR JUDICIAL NOTICE**

John J. Menchaca, the Chapter 7 trustee (the "**Trustee**") for the estate of ROK Mobile, Inc. (the "**Debtor**"), respectfully requests that the Court take judicial notice of the following:

1. On or about April 27, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief (doc. no. 1) under Chapter 7 of the Bankruptcy Code (the "**Bankruptcy Case**" or "**Case**"). The Trustee was subsequently appointed as the Chapter 7 Trustee in this case. (*Docket* Nos. 1, 5.)

2. According to Debtor's schedules, the general unsecured claims total approximately $87,000,000, consisting primarily of claims by Debtor's owners and parent companies. (*Docket* No. 1, at p. 8.)

3. The Debtor scheduled as an asset a $450,000 default judgment against Schad Brannon, a former employee of the Debtor (the "**Judgment**"). (*Docket* No. 1, at p. 12.)

4. The Judgment is currently on appeal in the California Court of Appeal, Second Appellate District, in ROK Mobile, Inc. v. Schad Brannon, Los Angeles Superior Court No. 19SMCV01492, appellate No. B308642. See https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=2&doc_id=2332931&doc_no=B308642&request_token=NiIwLSEmPkw2WzBRSCFNWE9IQFg6USxXIyBeXz5TUCAgCg%3D%3D

5. According to Debtor's schedules, the Debtor owns five (5) registered trademarks (the "Trademarks") of unknown value. (*Docket* No. 1, at p. 11.)

DATED: December 9, 2022

DANNING, GILL, ISRAEL & KRASNOFF, LLP

By: [signature]
UZZI O. RAANAN
DANIELLE R. GABAI
Attorneys for John J. Menchaca, Chapter 7 Trustee

EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into by and between (i) John J. Menchaca, the chapter 7 Trustee (the "**Trustee**") for the bankruptcy estate (the "**Estate**") of ROK Mobile Inc. (the "**Debtor**"), on the one hand, and (ii) ROKiT World, Inc., ROLA Records Inc, ROKiT World Limited, ROKiT Launch Limited, ROK Distribution LLC, ROK Mobile International Inc, ROK Stars Limited, RK Global PLC, ROK Water Technology Limited, ROKiT Industries Inc., Jonathan Kendrick, Daniel Lewis, and John Paul DeJoria (the "Settling Parties"), on the other hand. The Trustee and the Settling Parties are collectively referred to herein as the "**Parties**" or individually a "**Party**."

## RECITALS

A.      On April 27, 2021 (the "**Petition Date**"), Debtor filed for bankruptcy in the Los Angeles Division of the United States Bankruptcy Court for the Central District of California (the "**Court**") under chapter 7 of the title 11 of the United States Code (the "**Code**"), Bankcy. No. 2:21-bk-13413-SK (the "**Case**"). John J. Menchaca was subsequently appointed as Chapter 7 trustee for the Estate, a position he still holds.

B.      According to its Schedules, Debtor owns a default judgment (the "**Judgment**") obtained by the Debtor against Schad Brannon ("**Brannon**"), in the amount of $450,000. The Judgment is currently on appeal in the California Court of Appeal, Second Appellate District.

C.      Debtor also owns five (5) trademarks (the "**Trademarks**"), identified as:

   1.      ROKIT ONE, Reg. No. 5892462

   2.      ROKIT F ONE, Reg. No. 5892452

   3.      ROKIT IO PRO, Reg. No. 5904401

   4.      ROKIT IO 3D, Reg. No. 5892449

   5.      ROKIT IO LIGHT, Reg. No. 5904400

D.      The Judgment and Trademarks are hereinafter collectively referred to as the "**Sale Property**".

E.      The Trustee has reviewed financial information received from the Debtor, including prepetition revenues and expenses, transfers, loan agreements, liens, insurance policies, and various transfers between the Debtor and various related ROK and ROKIT entities. He has also conducted a lengthy 341(a) meeting of creditors interview with one of the Debtor's principals, as well as a rule 2004 examination of Debtor's person most knowledgeable on various subjects, including the Debtor's finances and reasons for the business failed. The Trustee also retained a financial advisor to review Debtor's financial records, including all incoming and

outgoing transfers. Based on his investigation, the trustee identified potential claims (the "**Potential Claims**") against the Settling Parties, including fraudulent transfers amounting to at least $50,000 and breaches of fiduciary duty, among other.

F. The Settling Parties dispute the Trustee's Potential Claims, arguing, among other things, that they loaned the Debtor more money than they received back, and that they properly managed the Debtor's business affairs.

G. The Trustee and Settling Parties have engaged in extensive discussions of the Trustee's Potential Claims, as well as the Settling Parties' desire to dispose of the Potential Claims and purchase the Sale Property. After significant discussions, and to avoid expensive and protracted litigation, the Parties have agreed to a settlement of the Trustee's Potential Claims and to the Trustee's sale of the Sale Property to the Settling Parties under the terms stated below.

## TERMS AND CONDITIONS

Based on the mutual promises contained herein and for other good and valuable consideration, the receipt of which is acknowledged, the Parties agree as follows:

1. Recitals Acknowledged. Each of the Parties acknowledges that, to the best of the Party's knowledge, each of the above recitals is true and correct.

2. Bankruptcy Court Approval; Effective Date; Compromise Motion.

a. The terms of this Agreement are subject to the approval of the Bankruptcy Court and, if appropriate, overbids. The Trustee is only selling the Estate's right, title and interest in the Sale Property. The Trustee is selling the Sale Property in an "as is" condition or basis, without any representations or warranties whatsoever.

b. Absent a stay of enforcement of the Approval Order (whether by operation of Rule 6004(h) or otherwise), the "**Effective Date**" of this Agreement shall be the date on which the Approval Order is entered. If there is a stay of enforcement of the Approval Order, the Effective Date of this Agreement shall be the first business day after the expiration or lifting of the stay.

c. Within five (5) business days after a full execution of this Agreement, the Trustee's counsel will prepare and file a motion (the "**Compromise Motion**") for entry of an order approving this Agreement and the terms hereof, as well as the Trustee's sale of the Sale Property to the Settling Parties (the "**Approval Order**").

3. Settlement and Sale Amount. In consideration for the terms of this Agreement, the Settling Parties shall pay the Trustee for the benefit of Debtor's estate a total of $500,000 (the "**Payment**"), in good funds. The Payment shall be made as follows:

          A.      Within three (3) business days after entry by the Court of the Approval Order, the Settling Parties shall deliver to the Trustee $200,000 (the "**First Payment**");

          B.      Within 30 days after entry by the Court of the Approval Order, the Settling Parties shall deliver to the Trustee $200,000 (the "**Second Payment**");

          C.      Within 60 days after entry by the Bankruptcy Court of the Approval Order, the Settling Parties shall deliver to the Trustee $100,000 (the "**Third Payment**").

If the Approval Order is not entered by the Bankruptcy Court or any overbidder is permitted to acquire the Sale Property, the Settling Parties shall have no further obligations under this Agreement and the Parties will return to the status quo ante existing prior to execution of this Agreement.

Upon entry of the Approval Order and only after payment in full of the Payment amount in good funds, the Trustee shall deliver all rights associated with the Judgment to **RK Solutions, Inc.** After payment in full of the Payment amount, RK Solutions, Inc. will succeed to the Trustee's position with respect to any litigation involving the Judgment, including, without limitation, the right to oppose the appeal pending in the Court of Appeal of the State of California, Second Appellate District, Division 2, in Case No. B308642 (the "**Appeal**").

          4.      Intentionally Omitted.

          5.      Waiver of Claims Against the Estate. The Settling Parties hereby agree that all claims they currently have or may have in the future in the Case against the Estate or the Trustee, whether or not filed in the Case to date, including any liens or encumbrances attached thereto, shall be waived and released in full, effective as of the of the Trustee's receipt of the final installment of the Payment. This includes any claims under 11 U.S.C. section 502(h), among others.

          6.      Releases.

Effective as of the date of the Trustee's receipt of the final installment of the Payment, and except as provided in this Agreement, the Trustee, on behalf of himself and the Estate, hereby releases, remises, relieves, waives, relinquishes and discharges the Settling Parties, as well as Settling Parties' affiliates and subsidiaries, and their respective officers, employees, members, partners, shareholders, agents, representatives, attorneys, heirs, successors and assigns, including but not limited to ROKiT World, Inc., ROLA Records Inc, ROKiT World Limited, ROKiT Launch Limited, ROK Distribution LLC, ROK Mobile International Inc, ROK Stars Limited, RK Global PLC, ROK Water Technology Limited, Jonathan Kendrick, Daniel Lewis, and John Paul DeJoria of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which the Trustee or the Estate had, now have, or may hereafter claim to have by reason of any matter, cause or circumstance arising out of or relating to the Case and/or the Potential Claims.

a. Effective as of the date of the Trustee's receipt of the final installment of the Payment, and except as provided in this Agreement, the Settling Parties hereby release, remise, relieve, waive, relinquish and discharge the Trustee, the Estate, and their officers, employees, members, partners, shareholders, agents, representatives, attorneys, heirs, successors and assigns, of and from any and all rights, claims, debts, demands, acts, agreements, liabilities, obligations, damages, costs, attorneys' fees, expenses, actions, and/or causes of action of every nature, character and description, whether known or unknown, suspected or unsuspected, which the Settling Parties had, now have, or may hereafter claim to have by reason of any matter, cause or circumstance arising out of the Case. This release includes any and all claims the Settling Parties may assert against the Estate and Trustee for any reason.

b. The Parties waive any and all rights and benefits they may have under section 1542 of the California Civil Code. That section reads as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

7. Trustee as Representative of a Bankruptcy Estate. The Parties acknowledge that the Trustee is a trustee appointed to administer the Estate. The Parties acknowledge and agree that this Agreement is being made by the Trustee solely in his capacity as the chapter 7 trustee of the Estate, and not in a personal capacity, and no liability or obligations shall accrue to the Trustee personally.

8. No Admission. This Agreement represents a compromise of claims and defenses that are disputed by the Parties. Neither the payment of the consideration, nor anything contained in this Agreement, shall be construed as an admission by any Party and shall not be used against any Party as evidence or otherwise to prove any fact or issue with respect to that Party in any legal action.

9. Notices. Any notices, demands or communications made pursuant to this Agreement shall be in writing and shall be deemed to have been duly given if delivered in person, by United States mail, by overnight service, or electronic mail as follows:

a. To the Trustee:

John J. Menchaca, Trustee
835 Wilshire Boulevard, Suite 300
Los Angeles, California 90017
jmenchaca@menchacacpa.com

with a copy to

Uzzi O. Raanan, Esq.
Danning, Gill, Israel & Krasnoff, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
uraanan@DanningGill.com

b.    To the Settling Parties

David L. Neale, Esq.
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK  L.L.P.
2818 La Cienega Avenue
Los Angeles, CA   90034
dln@lnbyg.com

If any notice, demand or communication is made pursuant to United States mail or overnight service, a copy shall also be sent to the Parties by electronic mail.

10.    Successors and Assigns.  This Agreement is binding upon and shall inure to the benefit of the Parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns.  This Agreement shall survive the Case's dismissal, closing or conversion to another chapter, and shall be binding on any successor trustee, debtor in possession or the revested Debtor.

11.    Governing Law and Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, and where appropriate federal laws, including under the Bankruptcy Code, without regard for choice of law principles of the State of California.  The Court in the Case shall retain exclusive jurisdiction to resolve any and all disputes pertaining to this Agreement, including without limitation the enforcement and interpretation of any of its terms, and the Parties agree to submit to the jurisdiction of the Court for the purpose of resolving such disputes.

12.    Further Assurances.  Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate the purpose of this Agreement.

13.    Filing in the Appeal.  The Trustee shall take all steps necessary to defend or oppose the Appeal prior to the transfer of rights to RK Solutions, Inc. contemplated by this Agreement.  To the extent necessary to address any filing deadlines associated with the Appeal, following the execution of this Agreement, the Trustee shall file any briefs or other pleadings in the Appeal to address issues raised by the court therein.  The Settling Parties shall provide a draft of any papers to be filed in the Appeal to counsel for the Trustee at least two (2) business days prior to any filing deadline.  If, at the time of any oral argument in the Appeal, the transfer of rights to RK Solutions, Inc. contemplated by this Agreement has not been effectuated, the Trustee shall take all steps necessary to secure counsel to appear on behalf of the Estate at such oral argument

14. Modification. This Agreement may be modified only by a writing executed by the Parties to this Agreement.

15. Attorneys' Fees and Costs. Each Party shall bear his, her or its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the Case, the preparation of this Agreement and the seeking of requisite approvals thereof.

16. Interpretation. This Agreement was negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement. Accordingly, any rule of law, statute, legal decision or common law principle that would otherwise require interpretation of any ambiguities in this Agreement against the Party that drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purpose and intent of this Agreement.

17. Authority to Sign. The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

18. Counterparts. Each Party may sign an electronic mail or facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

DATED: December 8th, 2022

By: ______________________

John J. Menchaca, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of ROK Mobile Inc.

DATED: November ___, 2022

ROKIT WORLD, INC.

By: ______________________

Position: Jonathan Kendrick, Director

14. Modification. This Agreement may be modified only by a writing executed by the Parties to this Agreement.

15. Attorneys' Fees and Costs. Each Party shall bear his, her or its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the Case, the preparation of this Agreement and the seeking of requisite approvals thereof.

16. Interpretation. This Agreement was negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement. Accordingly, any rule of law, statute, legal decision or common law principle that would otherwise require interpretation of any ambiguities in this Agreement against the Party that drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purpose and intent of this Agreement.

17. Authority to Sign. The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

18. Counterparts. Each Party may sign an electronic mail or facsimile copy of this Agreement, in counterparts, with the same effect as if each Party had signed an original of the same document.

DATED: November ___, 2022

By: ______________________________
John J. Menchaca, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of ROK Mobile Inc.

DATED: November 21, 2022

ROKIT WORLD, INC.

By: ______________________________

Position: Jonathan Kendrick, Director

DATED: November 21, 2022

ROLA RECORDS, INC.

By: [signature]

Position: Jonathan Kendrick, Director

DATED: November 22, 2022

ROKIT WORLD LIMITED

By: [signature]

Position: James Kendrick, Director

DATED: November 22, 2022

ROKIT LAUNCH LIMITED

By: [signature]

Position: James Kendrick, Director

DATED: November 21, 2022

ROK DISTRIBUTION, LLC

By: [signature]

Position: Jonathan Kendrick, Member

DATED: November [illegible], 2022

ROK MOBILE INTERNATIONAL, INC.

By: ______________________

Position: Jonathan Kendrick, Director

DATED: November 22, 2022

ROK STARS LIMITED

By: ______________________

Position: James Kendrick, Director

DATED: November 22, 2022

ROK GLOBAL LIMITED

By: ______________________

Position: James Kendrick, Director

DATED: November [illegible], 2022

ROK WATER TECHNOLOGY LIMITED

By: ______________________

Position: Jonathan Kendrick, Director

DATED: November 21, 2022

By: ____________________
Jonathan Kendrick

DATED: November 21, 2022

By: ____________________
Daniel Lewis

DATED: November ___, 2022

By: SIGNATURE TO FOLLOW
John Paul DeJoria

Main Document Page 34 of 35

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): **TRUSTEE'S NOTICE OF MOTION AND MOTION TO (1) APPROVE SETTLEMENT AGREEMENT WITH THE SETTLING PARTIES AND (2) APPROVE SALE OF ESTATE PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF JOHN J. MENCHACA, AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 12, 2022 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**: On December 12, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by causing to be placed a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 12, 2022 | Beverly Lew | */s/ Beverly Lew* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Main Document Page 35 of 35

**ADDITIONAL SERVICE INFORMATION (if needed):**

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Danielle R Gabai on behalf of Interested Party Courtesy NEF
dgabai@danninggill.com, dgabai@ecf.courtdrive.com

Daniel Parker Jett on behalf of Creditor Freeman Mathis & Gary, LLP
djett@fmglaw.com, slovos@fmglaw.com

Matthew A Lesnick on behalf of Creditor Universal Music Group, Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

William McCormick on behalf of Creditor TN Dept of Revenue
Bill.McCormick@ag.tn.gov

John J Menchaca (TR)
jmenchaca@menchacacpa.com, ca87@ecfcbis.com;igaeta@menchacacpa.com

Alexander M Merino on behalf of Creditor Merino Yebri LLP
amerino@mylawllp.com

David L. Neale on behalf of Debtor ROK Mobile Inc.
dln@lnbyg.com

Uzzi O Raanan, ESQ on behalf of Trustee John J Menchaca (TR)
uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com

Zev Shechtman on behalf of Interested Party Courtesy NEF
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Trustee John J Menchaca (TR)
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Jeffrey L Sumpter on behalf of Trustee John J Menchaca (TR) jsumpter1@cox.net

United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

## 2. SERVED BY U.S. MAIL

ROK Mobile Inc.
17383 Sunset Blvd, Suite A300
Pacific Palisades, CA 90272

The Honorable Sandra R. Klein
U.S. Bankruptcy Court
255 E. Temple Street, Suite 1582
Los Angeles, CA 90012

Attys. for Settling Parties
David L. Neale, Esq.
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034

Attys. for Settling Parties
Roye Zur, Esq.
Elkins Kalt Weintraub Reuben Gartside LLP
10345 W Olympic Blvd,
Los Angeles, CA 90064

John Paul Dejoria
Grimmett Company
2275 Corporate Circle
Henderson, NV 89074-7719

Jonathan Kendrick
ROK House, Kingswood Business Pk
Albrighton, Wolverhmapton, WV7 3AU
UNITED KINGDTON

Jonathan Kendrick
ROK House, Kingswood Business Pk,
Holyhead Rd, Wolverhampton, WV73AU
UNITED KINGDOM

SKYROKiT Inc.
17383 W. Sunset Blvd., A300
Pacific Palisades, CA 90272-4181

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**